UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO.1:18-cv- 14 - GNS

JUDY COURTIER,
and JOHN COURTIER,                                              PLAINTIFFS

v.

THE UNITED STATES OF AMERICA,
CUMBERLAND FAMILY MEDICAL
CENTER d/b/a/ MONROE FAMILY
MEDICAL CENTER, and JACK D.
ANDERSON, D.O.,

                                                                DEFENDANTS

NOW COME, Plaintiffs, Judy Courtier, and John Courtier, by and through the undersigned counsel and Wilkes & McHugh, P.A., and files the instant Complaint in Civil Action, states and avers the following:

## INTRODUCTION

1. This is an action the Defendant United States of America under the Federal Tort Claims Act, (28 U.S.C. §2671, *et seq.*) and 28 U.S.C. §1346(b) for negligence, professional malpractice, and loss of consortium in connection with medical care provided to Plaintiff Judy Courtier by Monroe Family Medical Center and Dr. Jack D. Anderson, DO; the Plaintiffs reside in Monroe County which lies in the United States Wester District of Kentucky, and the act and omissions herein complained of occurred in the same.

2. The claims herein are brought against the Defendants pursuant to the Federal Tort Claims Act (28 U.S.C. §2671, *et seq.*) and 28 U.S.C. §1346(b)(1), for money damages as compensation for personal injuries caused by the Defendants' negligence.

3.	Plaintiffs have fully complied with the provisions of 28 U.S.C §2675 of the Federal Tort Claims Act and exhausted all administrative remedies in connection with the allegations herein. *Standard Forms 95 attached as Exhibits 1(Judy Courtier) and 2 (John Courtier).*

4.	Plaintiffs are now filing this Complaint pursuant to 28 U.S.C. §2401(b) after receiving the Department of Health and Human Services' December 12, 2017 notice of final denial of administrative claim. *Administrative Tort Claim Denial Letter attached as Exhibit 3.*

5.	This suit has been timely filed, in that Plaintiffs Judy Courtier and John Courtier timely served notice of their claims on both the United States Department of Health and Human Services, Monroe Family Medical Center, and Dr. Jack D. Anderson less than two years after the incidents forming the basis of this suit.

## PARTIES

6.	JUDY COURTIER is a citizen and resident of the Commonwealth of Kentucky residing at 309 S. Magnolia St., Lot 6, Tompkinsville, Monroe County, Kentucky, and was at all times mentioned herein the lawful spouse of John Courtier.

7.	JOHN COURTIER is a citizen and resident of the Commonwealth of Kentucky residing at 309 S. Magnolia St., Lot 6, Tompkinsville, Monroe County, Kentucky, and was at all times mentioned herein the lawful spouse of Judy Courtier.

8.	Defendant, the UNITED STATES OF AMERICA operates, oversees, manages, and/or funds the Cumberland Family Medical Center d/b/a Monroe Family Medical Center as a qualified health center under section 330 of the federal health center consolidation act of 1996. 42 U.S.C. § 254b(a).  The registered agent for service of process for Defendant, the United States of America, is the Office of the United States Attorney General, United States Department of Justice, 950 Pennsylvania Avenue, NW, Washington D.C., 20530-0001.

9. Defendant, CUMBERLAND FAMILY MEDICAL CENTER d/b/a/ MONROE FAMILY MEDICAL CENTER (hereinafter referred to as "Monroe Family Medical Center"), is a Kentucky corporation duly authorized and existing under the laws of the Commonwealth of Kentucky and conducts business under the assumed name of Monroe Family Medical Center, among other offices and assumed names, by and through physicians and other medical providers for the provision of medical care and treatment to members of the public as well as by and through its other agents, servants and/or employees. Monroe Family Medical Center's office is located at 1515 Edmonton Road, Tompkinsville, Kentucky 42167, Monroe Family Medical Center's principal office is located at 360 Keen St. Burkesville, Kentucky 42717 and its registered agent for service of process is Eric Loey, CEO, P.O. Box 1080, 360 Keen Street, Burkesville, Kentucky 42717. Monroe Family Medical is a Federally Qualified Health Center as defined by the US Department of Health and Human Services.

10. JACK D. ANDERSON, D.O. (hereinafter referred to as "Dr. Anderson") is a physician who at all times stated herein practiced his profession at and for Monroe Family Medical in Tompkinsville, Monroe County, Kentucky. Jack D. Anderson, D.O. treated patients himself and by and through his agents, servants, and/or employees and through the agents, servants, and/or employees of Monroe Family Medical Center.

11. At all times relevant to the Complaint, Monroe Family Medical Center and Jack D. Anderson, DO held themselves out to the Plaintiff and eligible beneficiaries, as a provider of high quality health care services, with the expertise necessary to maintain the health and safety of patients like the Plaintiff.

**JURISDICTION AND VENUE**

12. The Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. § 1346(b)(1), the Federal Tort Claims Act.

13. The claims of Plaintiffs asserted herein involve Medical Negligence by Defendant, Dr. Jack D. Anderson, in the course of his employment and agency with Monroe Family Medical Center. In addition, Plaintiff asserts negligence by unknown employees of Monroe Family Medical Center for failing to accurately record Judy Courtier's medications in her medical records. On information and belief, Monroe County Medical Center is a Federally Qualified Health Center and as such, its medical providers are covered under the Federal Tort Claims Act.

14. Defendant United States of America is liable for the errors, acts and omissions of Monroe Family Medical Center, its physicians, nurses, technical staff, and employees pursuant to 42 U.S.C. §233(g)(h), 42 U.S.C. §233(A), and 28 U.S.C. 2679(b).

15. As to Defendant, Dr. Jack D. Anderson, the jurisdiction of this Court is predicated upon 28 U.S.C. §1367 as Plaintiffs contend that the claims against Defendant, Dr. Jack D. Anderson, are so related to claims in the action against Defendant, United States of America, over which the Court has original jurisdiction that they form part of the same case or controversy.

16. The amount in controversy exceeds the sum or value of $75,000 exclusive of interest or costs.

17. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1402(b) as a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, Monroe County, Kentucky.

### FACTUAL ALLEGATIONS

18. Judy Courtier suffers from rheumatoid arthritis and was seen and treated for this condition by Dr. Anderson, a physician employed by Cumberland Family Medical Centers in their Monroe Family Medical Center office.

19. Monroe Family Medical Center is a Federally Qualified Health Center as defined by the US Department of Health and Human Services.

20. Judy Courtier was a patient of Monroe Family Medical Center for a number of years and was known to Dr. Anderson.

21. On or about March 17, 2016, Dr. Anderson referred Judy Courtier to Dr. Neha Pansuria, a rheumatologist practicing in Bowling Green, Kentucky.

22. On or about April 15, 2016, Dr. Neha Pansuria treated Judy Courtier for rheumatoid arthritis and prescribed Methotrexate 2.5 MG TAB, two (2) tables to be administered by mouth **once a week**.

23. On or about April 15, 2016, Judy Courtier presented the pharmacist employed by Wal-Mart Pharmacy #2654 located within Wal-Mart in Tompkinsville, Monroe County, with prescriptions for medications written by Dr. Pansuria.

24. On or about April 15, 2016, Wal-Mart filled and provided to Judy Courtier the prescription prescribed by Dr. Pansuria for Methotrexate 2.5 MG TAB, two (2) tables to be administered by mouth **once a week**.

25. On April 28, 2016 and May 10, 2016, Judy Courtier was treated at Monroe Family Medical. On both occasions, April 28, 2016 and May 10, 2016, Judy Courtier was treated by Dr. Anderson.

26. On April 28, 2016 and May 10, 2016, Judy Courtier's medical records transcribed by an agent, servant and/or employee of Monroe Family Medical, incorrectly reflected that Judy Courtier had been prescribed Methotrexate 2.5 MG TAB, one (1) tablet by mouth **BID (twice daily)**.

27. Methotrexate is a toxic medication. More frequent administration of methotrexate

than weekly has been found to increase the risk of toxicity.[1]

28. However, neither Monroe Family Medical staff nor Dr. Anderson questioned or counseled Judy Courtier regarding the incorrect and highly toxic dosage recorded in her Monroe Family Medical record.

29. On or about June 9, 2016, the Wal-Mart Pharmacy re-filled the prescription provided to Judy Courtier by Dr. Pansuria for Methotrexate 2.5 MG TAB, two (2) tablets to be administered by mouth once a week.

30. On or about July 18, 2016, Judy Courtier again went to Monroe Family Medical and was seen by Dr. Anderson. On this date, Judy Courtier complained of diarrhea and weakness. Judy Courtier also asked Dr. Anderson to manage her Methotrexate therapy as it was a financial hardship to pay a specialist's copay and to travel to Bowling Green for appointments.

31. Dr. Anderson, acting individually and/or as the agent, servant and/or employee of Monroe Family Medical, agreed to assume management of Judy Courtier's Methotrexate therapy. Dr. Anderson wrote prescriptions for various medications for Judy Courtier to have filled at a pharmacy and administered to her including, but not limited to, Methotrexate 2.5 MG TAB, one (1) tablet by mouth **BID (twice daily)**. This was not the dosage and frequency prescribed by Dr. Pansuria. Dr. Anderson prescribed a toxic dose of 35 total milligrams of Methotrexate per week (5 mg per day, 7 days a week).

32. On or about July 18, 2016, Dr. Anderson transmitted a prescription electronically for Methotrexate 2.5 MG TAB, one (1) tablet by mouth BID (twice daily) to Wal-Mart Pharmacy #2654 located within Wal-Mart in Tompkinsville, Monroe County, Kentucky.

33. The Wal-Mart Pharmacy filled the prescription as written by Dr. Anderson.

---

[1] http://www.aafp.org/afp/2000/1001/p1607.htm1#afp20001001p1607-b7

34. The medications, including those mentioned above, were then administered to Judy Courtier as directed and prescribed by Dr. Anderson and Monroe Family Medical and as filled by Wal-Mart.

35. On or about July 24, 2016, Judy Courtier went to the emergency-room at Monroe County Medical Center, the hospital that services the Tompkinsville, KY area. She was treated by the ER physician and received antibiotics. During her hospitalization at Monroe County Medical Center, Judy Courtier's medical records reflected that she was currently taking the prescription for Methotrexate 2.5 MG Tab, one (1) tablet by mouth BID (twice daily).

36. On or about July 26, 2016, Judy Courtier again sought treatment by Dr. Anderson at Monroe Family Medical due to painful and difficult swallowing, as well as a sore throat with weakness and a cough.

37. On or about July 26, 2016, Dr. Anderson admitted Judy Courtier to Monroe County Medical Center with an initial diagnosis of pneumonia, dehydration, and weakness. Dr. Anderson was Judy Courtier's attending physician at Monroe County Medical Center during this admission.

38. During her hospitalization at Monroe County Medical Center, Judy Courtier's medical records reflected that Dr. Anderson again prescribed Methotrexate 2.5 MG TAB, one (1) tablet by mouth BID (twice daily).

39. Despite the fact that Judy Courtier's prescription for Methotrexate included an obviously toxic dosage, Dr. Anderson never alerted Judy Courtier regarding the prescribed toxic dosage nor did he discontinue the Methotrexate.

40. Throughout her hospitalizations at Monroe County Medical Center, Judy Courtier continued to receive Methotrexate 2.5 TAB, one (1) tablet by mouth BID (twice daily).

41. Throughout her hospitalization, Judy Courtier exhibited signs and symptoms of

Methotrexate toxicity.

42. On or about July 29, 2016, Dr. Anderson and Monroe County Medical Center discharged Judy Courtier with orders to continue the Methotrexate 2.5 MG TAB, one (1) tablet by mouth BID (twice daily). The toxic dose of Methotrexate was continued.

43. On or about August 3, 2016, Judy Courtier awoke and began to vomit bloody emesis. John Courtier rushed Judy Courtier to the Monroe County Medical Center for treatment. It was determined that Judy Courtier required immediate transfer and admission to Bowling Green Medical Center due to significant complications from pancytopenia (severe depression of the critical components of blood including, but not limited to, red blood cells, white blood cells, and platelets) and Methotrexate toxicity. Judy Courtier's diagnoses included, but were not limited to, sepsis (pseudomonas), dehydration with acute renal failure, acute kidney injury, hypokalemia, hypophosphatemia, metabolic acidosis, hemoptysis, gastrointestinal bleeding, elevated liver enzymes, candida esophagitis, stomatitis, cellulitis of the right foot, cellulitis of the right buttock, papulo-vesicular lesions (head and neck), laryngeal edema with dysphagia, and atrial fibrillation. During this admission to Bowling Green Medical Center, the attending physicians discontinued the Methotrexate 2.5 MG TB, one (1) tablet BID (twice daily).

44. Subsequent to Judy Courtier's hospitalization at Bowling Green Hospital for Methotrexate toxicity, Judy Courtier has had many complications including, but not limited to, chronic anemia, dizziness, shortness of breath, fatigue, decreased mobility, pain, infection of the right foot wound, increased risk of leukemia, memory loss, recurrent anxiety, and panic attacks that have required additional hospitalization.

45. Judy Courtier also suffered and continues to suffer unnecessary loss of personal dignity, pain and suffering, degradation, mental anguish, disability, and disfigurement, all of which

were caused by the wrongful conduct of all as alleged herein.

46. The injuries described in this Complaint are a direct and proximate result of the acts or omissions set forth herein, singularly or in combination. As a result of these injuries, Judy Courtier's health deteriorated and she required medical treatment.

47. The injuries suffered by Judy Courtier, and the time spent hospitalized, have left her unable to assist John Courtier in the administration of their household. Judy Courtier is unable to assist with housekeeping, cooking, shopping, errands, or any other task that requires standing or walking more than very short distances. John Courtier must physically assist Judy Courtier to and from her bed to any room in their home and must complete nearly all household tasks by himself.

48. Plaintiffs have exhausted all administrative remedies against the federal government under the Federal Torts Claims Act (FTCA) in connection with the allegations herein.

### Nature and Extent of Injuries

49. Judy Courtier suffered pancytopenia, Methotrexate toxicity, sepsis (pseudomonas), dehydration with acute renal failure, acute kidney injury, hypokalemia, hypophosphatemia, metabolic acidosis, hemoptysis, gastrointestinal bleeding, elevated liver enzymes, candida esophagitis, stomatitis, cellulitis of the right foot, cellulitis of the right buttock, papulo-vesicular lesions (head and neck), laryngeal edema with dysphagia, and atrial fibrillation.

50. Subsequent to Judy Courtier's hospitalization at Bowling Green Hospital for Methotrexate toxicity, Judy Courtier has suffered many complications including, but not limited to, chronic anemia, dizziness, shortness of breath, fatigue, decreased mobility, pain, infection of the right foot wound, increased risk for leukemia, memory loss, recurrent anxiety, and panic attacks that have required additional hospitalization.

51. Judy Courtier has also suffered and continues to suffer unnecessary loss of personal dignity, pain and suffering, degradation, mental anguish, disability, and disfigurement, all of which were caused by the wrongful conduct of all as alleged herein. As a result of these injuries, Judy Courtier's health deteriorated and she required medical treatment.

52. John Courtier hereby claims loss of spousal consortium that resulted from the injuries suffered by Judy Courtier while she was under the aforementioned care provided by Dr. Anderson and Monroe Family Medical Center. As a direct and proximate result of Dr. Anderson's and Monroe Family Medical Center's acts complained of herein, John Courtier, as husband of Judy Courtier, has suffered the loss of services, assistance, aid, society, companionship and conjugal relationship of his wife which were and are of great value to John Courtier.

## CAUSES OF ACTION

## COUNT I – NEGLIGENCE

53. The Plaintiffs reiterate and restate each and every allegation stated above as if fully set forth herein.

54. Defendants had a duty to provide ordinary care, and to exercise that standard and degree of care and skill required of health care providers, consistent with the expertise that the Defendants presented to the community at large.

55. At all times relevant to this Complaint, the Defendants had a duty to hire competent operators, administrators, clerical staff, technical staff, employees, and agents in order to meet the standards of quality of care of its patients, including Judy Courtier. The Defendant knew, or should have known, that the medical staff of the Center was not properly trained, and/or supervised, in a manner necessary to provide a level of care for Judy Courtier that met all applicable legal requirements; that demonstrated the standard and degree of care and skill required of competent

health care providers; and was consistent with the expertise that the Defendant presented to the community at large.

56. The Defendants breached their duty of care to Judy Courtier. Defendants, Monroe Family Medical and Dr. Anderson, acting individually as well as by and through their agents, servants and/or employees were negligent in their care and treatment of Judy Courtier.

57. Defendants breached their duty by negligently hiring incompetent, inexperienced and/or unqualified operators, medical staff, technical staff, administrators, employees, or agents. The staff responsible for accurately recording Judy Courtier's medications in her medical record failed to do so by recording Methotrexate 2.5mg tablet, one by mouth **twice daily**. The staff member recording the medication and supervising personnel, including Defendant Dr. Jack D. Anderson, failed recognize the toxic dose and failed to correct the record.

58. As a direct and proximate result of the negligence of Defendants, Monroe Family Medical Center and Dr. Anderson, Judy Courtier sustained serious, grievous, and permanent injuries.

59. As a result of the negligence mentioned hereinabove Judy Courtier suffered serious, grievous and permanent injuries in and about her body; she has incurred medical expenses, and other damages, and will continue to incur medical expenses, and other damages in the future; she was forced to endure pain, suffering and mental anguish, and will continue to endure pain, suffering, and mental anguish in the future; she has suffered loss of enjoyment of life, and will continue to suffer a loss of the enjoyment of life in the future; Judy Courtier suffered damages in an amount in excess of any minimum dollar amount necessary to establish jurisdiction of this Court.

60. As a direct and proximate result of the negligence mentioned hereinabove, and the

serious, grievous and permanent injuries suffered, Judy Courtier has incurred medical expenses in an amount that is fair and reasonable and in excess of any minimum dollar amount necessary to establish the jurisdiction of this Court.

61. The acts and/or omissions set forth above would constitute a claim under the law of the Commonwealth of Kentucky.

62. Defendants are liable pursuant to 28 U.S.C. 1346(b)(1).

## COUNT II – MEDICAL NEGLIGENCE

63. The Plaintiffs reiterate and restate each and every allegation stated above as if fully set forth herein.

64. The Defendants owed Judy Courtier the duty to provide a facility and environment which would establish and follow procedures regulating the prescription for and administration of medications to patients in a safe and reasonable manner and to exercise that degree of care and skill ordinarily expected of a reasonable and prudent medical facility and physician acting under similar circumstances. The duty includes, but is not limited to, the duty to monitor medications prescribed in such a manner that would protect the safety of its patients; the duty to develop and implement adequate policies and procedures for the prescription of and filling of medicine prescriptions; the duty to order and monitor laboratory values related to Methotrexate therapy; the duty to provide nursing staff and nursing supervision to insure the safety of patients; the duty to select and retain only competent and qualified physicians to insure the safety of patients; and, the duty to establish and follow procedures regulating the administration of medication to its patients.

65. The Defendants breached their professional duties to Judy Courtier. Defendants failed to meet the standards of care by failing to exercise that degree of care and skill ordinarily expected of a reasonable and prudent medical facility and reasonable and prudent physician acting

under the same or similar circumstances. Dr. Jack D. Anderson on three occasions (July 18, 2016, July 26, 2016, and July 29, 2016) prescribed a toxic dose of Methotrexate to Judy Courtier. Dr. Jack D. Anderson failed to recognize and diagnose Methotrexate toxicity when Judy Courtier presented with positive symptoms both in the clinic and in the hospital.

66. As a direct and proximate result of the negligence of Defendants, Judy Courtier sustained serious, grievous and permanent injuries. Judy Courtier suffered serious, grievous and permanent injuries in and about her body; she has incurred medical expenses, and other damages, and will continue to incur medical expenses, and other damages in the future; she was forced to endure pain, suffering and mental anguish, and will continue to endure pain, suffering, and mental anguish in the future; she has suffered loss of enjoyment of life, and will continue to suffer a loss of the enjoyment of life in the future.

67. As a direct and proximate result of the negligence mentioned hereinabove, and the serious, grievous and permanent injuries, Judy Courtier incurred medical expenses in an amount that is fair and reasonable and in excess of any minimum dollar amount necessary to establish the jurisdiction of this Court.

68. The acts and/or omissions set forth above would constitute a claim under the law of the Commonwealth of Kentucky.

69. The Defendants are liable pursuant to 28 U.S.C. §1346(b)(1).

## COUNT III – LOSS OF CONSORTIUM

70. The Plaintiffs reiterate and restate each and every allegation stated above as if fully set forth herein.

71. As a direct and proximate result of the negligence mentioned hereinabove, and the serious, grievous and permanent injuries suffered by Judy Courtier, Plaintiff, John Courtier,

husband of Judy Courtier, suffered the loss of services, assistance, aid, society, companionship and conjugal relationship which were and are of great value to Plaintiff, John Courtier, and destroyed in an amount that is fair and reasonable and in excess of any minimum dollar amount necessary to establish the jurisdiction of this Court.

72. The acts and/or omissions set forth above would constitute a claim under the law of the Commonwealth of Kentucky.

73. The Defendants are liable pursuant to 28 U.S.C. §1346(b)(1).

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that judgment be entered in their favor against Defendants, The United States of America, Cumberland Family Medical Center d/b/a Monroe Family Medical Center, and Jack D. Anderson, D.O., jointly and severally, in a sum in excess of any minimum dollar amount necessary to establish the jurisdiction of this Court, post-judgment interest, bench trial, costs herein expended and any and all other relief to which they may appear properly entitled.

Respectfully Submitted,

Judy Courtier and John Courtier, this 23rd day of January, 2018,

By: /s/ Brian M. Jasper (KY 94428)
BRIAN M. JASPER (KY 94428)
P. KEVIN HACKWORTH (KY 87169)
WILKES & MCHUGH, P.A.
P.O. Box 1747
Lexington, KY 40588
Phone: (859) 455-3356
Fax: (859) 455-3362
Email: bjasper@wilkesmchugh.com
Email: khackworth@wilkesmchugh.com
*Attorneys for Plaintiffs*